## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JAD JOUBRAN,

     Plaintiff,

v.

                                                Case No.: _____

BEAU MONDE, INC., a Florida
not-for-profit corporation, and
CASTLE MANAGEMENT, LLC,
a Florida limited liability company,

     Defendants.

_____/

## **COMPLAINT**

## **(Declaratory and Injunctive Relief Requested)**

COMES NOW Plaintiff Jad Joubran ("Mr. Joubran"), and hereby sue

Defendants Beau Monde, Inc. and Castle Management, LLC (collectively,

"Defendants"). In support thereof, Plaintiff alleges the following:

### NATURE OF ACTION

1.     This is an action brought for housing discrimination based on

handicap under the Fair Housing Act, 42 U.S.C. § 3601, et seq. (the "Act") for

monetary damages and equitable relief.

### JURISDICTION AND VENUE

2.      This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

3.      This court has personal jurisdiction over Defendants because Defendants have conducted ongoing business transactions in this Judicial District, and the acts or omissions giving rise to this action occurred in this Judicial District, which caused harm that Defendants knew or should have known was likely to be suffered in this Judicial District.

4.      Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, under 28 U.S.C. §§ 1391(b)(2).

<u>PARTIES</u>

5.      Plaintiff, Jad Joubran is an individual and Canadian citizen domiciled at 6538 Spinnaker Circle, Mississauga, Ontario L5W 1R1.

6.      Defendant, Beau Monde, Inc. ("Beau Monde") is a Florida not-for-profit corporation with a principal address care of Castle Group, 12270 SW 3rd Street, suite 200, Plantation, FL 33325.

7.      Defendant, Castle Management, LLC ("Castle Group") is a Florida limited liability company with a principal address of 12270 SW 3rd Street, suite 200, Plantation, FL 33325.

<u>FACTUAL ALLEGATIONS</u>

8.      At all times relevant to the Complaint, Beau Monde was the owner of the common areas of the condominium building located at 4950 Gulf Boulevard, St. Pete Beach, FL 33706, in Pinellas County (the "Subject Property").

9.      At all times relevant to the Complaint, Castle Group managed the Subject Property and its common areas, and was responsible for interpreting and enforcing the rules and regulations applicable to the Subject Property and its residents.

10.     The Subject Property is a dwelling within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(b) because it is a building occupied as a residence by several families.

11.     The Plaintiff owns condominium unit number 409 within the Subject Property, and resides in that unit as a part-year resident. His wife, Roula Joubran ("Mrs. Joubran"), resides with him at the Subject Property and in Ontario.

12.     Mr. Joubran is an adult male with non-visible disabilities or mental impairments that substantially limit one or more of his major life activities.

13.     The impairments that Plaintiff suffers are substantially alleviated by the presence of an emotional support animal.

14.     Plaintiff owns an emotional support animal, a dog.

15.     Defendants impose rules and regulations regarding the presence of animals at the Subject Property.

16.    One such rule is that a resident wishing to have an animal at the Subject Property (a service animal or a support animal) must apply to Castle Group for authorization to have the animal at the Subject Property.

17.    Mr. Joubran requested such authorization in March 2023. Defendants initially denied the request as containing insufficient information. In May 2023, Mr. Joubran resubmitted his request for authorization to have a support animal at the Subject Property, and provided additional information.

18.    On or about 09 May 2023, Deborah Ippolito of Castle Group, the property manager at the Subject Property, sent a letter to Mr. Joubran; the letter authorized the use of a support animal. Ms. Ippolito also included a fuller list of rules and regulations applicable to animals and their owners. Among these rules and regulations were rules against the animals being allowed to walk in the common areas of the Subject Property; they must be carried. A copy of Ms. Ippolito's letter is attached as Exhibit A, and the rules and regulations are attached as Exhibit B.

19.    Mr. Joubran's dog weighs approximately 40 pounds.

20.    Mr. Joubran is unable to carry the dog without notable physical discomfort.

21.    The physical discomfort that Mr. Joubran feels when he attempts to carry the dog interferes with his ability to use and enjoy the dwelling.

22.     Mr. Joubran's dog becomes agitated and fretful when carried, and when being carried in a carrier.

23.     When agitated and fretful, Mr. Joubran's dog is unable to perform his function as a support animal.

24.     On 01 June 2023, Mr. and Mrs. Joubran traveled to the Subject Property with the support animal, and occupied their unit.

25.     Shortly afterwards, Ms. Ippolito approached Mrs. Joubran, discussed the support animal with her, and advised that there had been complaints about the animal. Ms. Ippolito advised Mrs. Joubran to use the stairs when traveling with the animal to reduce other people's stress, and to carry doctor's notes with her to demonstrate her eligibility to have a support animal. Ms. Ippolito commented that it would be best of the support animal were "to stay out of sight."

26.     On 05 June 2023, Mr. Joubran sent an email to Ms. Ippolito regarding the encounter between Ms. Ippolito and Mrs. Joubran, and conveyed that it was his understanding that the recommendations to use the stairs and carry documentation were not required by any law regarding support animals; attached to the email was documentary support for this understanding. A copy of this email is attached as Exhibit C.

27.    The following day, on 06 June 2023, Mr. Joubran sent another email to Ms. Ippolito, asking for clarification of the Beau Monde rules. A copy of this email is attached as Exhibit D.

28.    During the week following this letter, two of Beau Monde's board members, Rose Noritake and Kay Belfance, approached Mrs. Joubran while she was walking the dog outside the Subject Property and asked her numerous questions about the dog, its ownership, its purpose, and the measures Mrs. Joubran takes to assure cleanliness. Mrs. Joubran understood this encounter to be harassing.

29    The following week, Mr. Joubran met with Ms. Ippolito and Ms. Belfance regarding the rules. In the meeting, Mr. Joubran reiterated his request for clarification of the Beau Monde rules.

30.    In all of Mr. Joubran's communications with Beau Monde, its board members, and its agents, he cited his understanding of the rule regarding the carrying of support animals; on several occasions, he provided documentation supporting his understanding that the rule was contrary to the Fair Housing Act and was unenforceable.

31.    On 30 June 2023, Beau Monde's attorney, Ann Hathorn, sent a letter to Mr. Joubran, stating that he was in violation of Beau Monde's rules by walking (and allowing others to walk) his support animal in the common areas, rather than

carrying it. The letter stated that legal action to remove the animal would follow if there was not compliance. A copy of the letter is attached as Exhibit E.

32.     The letter included false allegations regarding where the dog relieves himself, and whether Mr. Joubran was confrontational during his meetings with Beau Monde staff.

33.     The letter failed to address Mr. Joubran's requests for clarification of the rules, and implied (through its false accusation of confrontational behavior) that the act of seeking such clarification constituted "nuisance" behavior.

34.     Other residents at the Subject Property have been observed walking their support animals or service animals in the common areas without hindrance, and to have done so repeatedly, indicating the Defendants' permission to do so.

35.     The letter exacerbated Mr. Joubran's stress and anxiety, which had been the reason for needing a support animal to begin with.

36.     Mr. and Mrs. Joubran left the Subject Property and returned to Canada on or about 08 July 2023.

37.     In early August of 2023, Mr. Joubran contacted the Pinellas County Office of Human Rights, seeking to file a complaint against Defendants for violating the Fair Housing Act. After being informed of the procedure for such a complaint, Mr. Joubran filed a housing discrimination complaint with PCOHR on

07 August 2023. PCOHR is allowed to investigate housing discrimination claims
on behalf of the U.S. Department of Housing and Urban development (HUD).

38.     Pursuant to 42 U.S.C. § 3608(c), the PCOHR conducted an
investigation of the complaint and prepared a final investigative report.

39.     Based on the information gathered during its investigation of the
complaint, the PCOHR concluded that reasonable cause existed to believe that
Defendants had engaged in illegal discriminatory housing practices.

40.     On 08 December 2023 the PCOHR issued a Determination of
Reasonable Cause for the complaint, charging Defendants with engaging in
unlawful housing discrimination on the basis of handicap, in violation of the Fair
Housing Act. A copy of the determination is attached as Exhibit F.

41.     On 18 April 2024 the PCOHR advised Mr. Joubran of his ability to
bring a civil action in federal district court if he elected to do so within 20 days of
the letter. A copy of the letter with this advice is attached as Exhibit G.

42.     On 07 May 2024, Mr. Joubran, through the undersigned counsel,
elected to bring a civil action in federal court. A copy of the election letter is
attached as Exhibit H.

43.     On 17 June 2024, the board of directors for Beau Monde held its
periodic meeting. While such meetings are ordinarily noticed to all owners within
Beau Monde, Mr. Joubran was not provided with notice of this meeting.

44.    At the 17 June 2024 board meeting, the president of the board indicated that the PCOHR was "not a court," and that the rules regarding animals at the Subject Property would continue to be enforced as they had before. At the meeting, the board president also misrepresented the subject of a different complaint that Mr. Joubran had made, in a manner that put Mr. Joubran in an unfavorable light.

45.    Not having been noticed of the meeting at which his case would be discussed, Mr. Joubran had no opportunity to comment thereon.

46.    Mr. Joubran subsequently asked a member of the Castle Group managerial team why he had not received notice of the board meeting at which his case would be discussed.

47.    No board member or other member of Beau Monde or of Castle Group provided a reason for the lack of notice. The explanations that the Castle Group employee provided to Mr. Joubran regarding the reason for the lack of notice changed over time.

48.    As Mr. Joubran's case was discussed at the meeting, and other aspects of Mr. Joubran's interactions with defendants were discussed at the meeting, in a manner that cast Mr. Joubran in a negative light and where he had no opportunity to respond, Mr. Joubran understands the lack of notice to him to have been deliberate.

49.     The undersigned legal aid organization has agreed to commit its time and resources to this case.

<u>COUNT I – Discrimination against Jad Joubran [42 U.S.C. § 3604]</u>

50.     Paragraphs 1 through 49 are re-alleged and incorporated herein by reference.

51.     The Fair Housing Act ("The Act"), 42 U.S.C. § 3604, provides in pertinent part that,

> "it shall be unlawful...(f) (2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of-(A) that person…" 42 U.S.C. § 3604(f).

52.     Mr. Joubran is an "aggrieved person" as defined by the Act, 42 U.S.C. § 3602(i).

53.     The Defendants, through the above-referenced actions, discriminated against Mr. Joubran in the terms, conditions, or privileges of sale or rental of a dwelling, because of his handicap, by stating that he and his wife should use the stairs rather than the elevator to access their unit, in violation of 42 U.S.C. § 3604(f).

<u>COUNT II – Discrimination against Jad Joubran [42 U.S.C. § 3604]</u>

54.     Paragraphs 1 through 49, and 51 through 52, are re-alleged and incorporated herein by reference.

55.    The Defendants, through the above-referenced actions, discriminated against Mr. Joubran in the terms, conditions, or privileges of sale or rental of a dwelling, because of his handicap, by refusing to permit Mr. Joubran to allow his support animal to behave in a manner that would actually permit the animal to provide support, in violation of 42 U.S.C. § 3604(f).

<u>COUNT III – Refusal of Reasonable Accommodation [42 U.S.C. § 3604]</u>

56.    Paragraphs 1 through 49, and 51 through 52, are re-alleged and incorporated herein by reference.

57.    The Act, 42 U.S.C. § 3604, provides in pertinent part,

"For purposes of this subsection, discrimination includes…(B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f).

58.    The Defendants, through the actions described above, refused Mr. Joubran's request for a reasonable accommodation that the rule against allowing an animal to walk in the common areas of the Subject Property remain unenforced, an accommodation necessary to afford him an equal opportunity to use and enjoy the dwelling, in violation of 42 U.S.C. § 3604(f).

<u>COUNT IV – Retaliation [42 U.S.C. § 3617]</u>

59.    Paragraphs 1 through 49 are re-alleged and incorporated herein by reference.

60. The Act, 42 U.S.C. § 3617, provides in pertinent part: "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected by section 3603, 3604, 3605, or 3606 of this title."

61. The Defendants, through the actions described above, interfered with Mr. Joubran in his exercise of his rights granted or protected by section 3604 when it failed to provide him notice of the board meeting at which he and his case would be openly discussed, when such notice was routinely provided to all unit owners, in violation of 42 U.S.C. § 3617.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that the Court enter an order:

A. Declaring that the Defendants' discriminatory policies and practices, as set forth above, violated the Fair Housing Act, 42 U.S.C. § 3601, et seq.;

B. Ordering Defendants to take such affirmative steps as may be necessary to restore, as nearly as practicable, Jad Joubran and any other aggrieved persons to the position they would have been in but for the discriminatory conduct;

C. Ordering Defendants to take such actions as may be necessary to prevent the recurrence of any discriminatory conduct in the future to eliminate, to the extent practicable, the effects of their unlawful conduct, including

implementing policies and procedures to ensure that no applicants or residents are discriminated against because of handicap;

D.    Awarding actual and punitive monetary damages to Jad Joubran pursuant to 42 U.S.C. § 3613(c)(1);

E.    Awarding reasonable attorney's fees and costs, pursuant to 42 U.S.C. § 3613(c)(2); and

F.    Ordering such additional relief as the interests of justice may require.

<u>DESIGNATION OF PLACE OF TRIAL</u>

Plaintiffs hereby designate Tampa, Florida as the place of trial for the above-styled matter.

Respectfully submitted,

GULFCOAST LEGAL SERVICES, INC.
Attorney for Plaintiff Jad Joubran

__*/s/  James Alex Kushner*__
by: James Alex Kushner
Florida Bar No. 0029137
1112 Manatee Avenue East
Bradenton, Florida 34208
telephone: (941) 746-6151
fax: (727) 231-0935
JamesK@gulfcoastlegal.org



*Unparalleled Property Services*

May 9, 2023

Mr. Jad Joubran
6538 Spinnaker Circle
Mississauga, ON L5W1R1

**VIA EMAIL: Jad.Joubran@rogers.com**

**RE: Beau Monde Condo Unit 409-ESA Approval**

Dear Mr. Joubran:

This letter is a formal written approval for your service animal.

Please note that I have attached the adopted and current rules and regulations regarding your service animal.

Should you have any questions or concerns, please contact me via phone at (727) 914-8980 between the hours of 8 a.m. to 4 p.m., Monday through Friday.

**Beau Monde, Inc.**
**c/o Castle Group Management**
Sincerely,

**Deborah Ippolito, Property Manager**

Enc.
cc: Brian Bodor, President Beau Monde COA, Inc.
Anne Hathorn, Attorney at Law

EXHIBIT "B"

# BEAU MONDE INCORPORATED

## RULES RELATED TO ACCOMMODATIONS FOR DISABILITIES
## UNDER THE FAIR HOUSING LAWS

The following rules apply to any resident who has an animal pursuant to the Fair Housing Laws as an accommodation for a disability:

Within one week of notification of approval, a picture of the animal is to be submitted to the property manager for identification of the animal on premises.

Within one week of notification of approval, the resident/guest must provide proof of animal inoculations. Verification of inoculation must be provided on an annual basis to the property manager.

The animal cannot become a nuisance, including, but not limited to excessive barking, aggressive behavior, biting; pet owner failure to pick up waste, etc.,

There is **no designated animal area on the property**. The animal is to be walked outside of the Condominium Property.

The resident/guest is required to carry the animal or use a carrier throughout the building.

The animal is not allowed on the patio or in the swimming pool or gym.

Some residents in the building may have allergies to animals, therefore washing and drying of any article which is used by the animal is prohibited in the laundry rooms.

Animals are not allowed in the laundry rooms.

Any violations of these Rules may result in the removal of the animal from the Condominium property.

Adopted: January 20, 2021

EXHIBIT "C"

From: Jad JOUBRAN jad.joubran@rogers.com
Subject: Fwd: 409
Date: Jun 5, 2023 at 1:20:43 PM
To: Deborah Ippolito dippolito@castlegroup.com

Debbie

I came by a few times all morning to see you.  Almost caught you once as you were stepping away.  Thought you'd be available during the mornings.

Want to ask you to direct any and all comments directly to me and not any member of my family.  Appreciate it.

A comment was maid about complaints about our ESA.  Not clear what the issue is.  You made a comment that we are required to bring the dog through a side door?  That I find a little insulting.  Won't happen. It is not even in the building policy you sent me.  Is this the practice shared with all other owners who have an ESA?  If this remains the required pls advise and I will take it up with the Board.

Not sure if you requested from my wife that we carry the letter with us at all times?  Please clarify?  This info is completely confidential and it will not be shared with anyone.  Therefore no reason to carry it.

I am fully compliant with the required for my pet.  If other owners are complaining that is not my issue.  Please don't make it.

Again Debbie I came by at least 4-5 times and no one was around.


Please advise
Jad


Sent from my iPhone

Begin forwarded message:

**From:** Deborah Ippolito <dippolito@castlegroup.com>
**Date:** June 5, 2023 at 11:21:41 AM EDT
**To:** Jad JOUBRAN <jad.joubran@rogers.com>

**Subject: RE: 409**

Hi Jad,

I am back in the office, but I am running around the place. I am alone here and trying to troubleshoot various issues going on.

Sincerely,

Deborah  Ippolito
Property Manager | Castle Group
Beau Monde "Proudly Managed by the Castle Group" 4950 Gulf Blvd, St. Pete Beach, FL 33706
P: 727-914-8980 | C: (800) 337-5850 | F: dippolito@castlegroup.com | www.castlegroup.com

-----Original Message-----
From: Jad JOUBRAN <jad.joubran@rogers.com>
Sent: Monday, June 5, 2023 11:13 AM
To: Deborah Ippolito <dippolito@castlegroup.com>
Subject: Re: 409

Caution: This email originated from outside the Castle Group organization. Please exercise caution when clicking on any links or attachments. When in doubt, contact the IT Department.


Deborah
Please let me know when you're back at your office.

Thanks
Jad

Sent from my iPhone

EXHIBIT "D"

From: Jad JOUBRAN jad.joubran@rogers.com
Subject: Poliakoff: Assistance animals must be allowed in most areas
Date: Jun 6, 2023 at 4:37:42 PM
To: Deborah Ippolito dippolito@castlegroup.com

Deborah please review the attached.  Under fair housing act in the US EMA should not be restricted access.  I would suggest sharing with the Board and advise if I misunderstand.  Again I think it's an unfair and risky rule to have to carry our EMA in the lobby.  As well should have unrestricted access to all common area. It seems the law is pretty clear.


Thanks

Jad


https://www.floridatoday.com/story/money/2022/05/22/poliakoff-assistance-animals-must-allowed-most-areas/9714350002/


Sent from my iPhone

EXHIBIT "E"



**anne**hathorn
LEGAL SERVICES

June 30, 2023

CERTIFIED MAIL RRR 70221670000316876635
FIRST CLASS MAIL

Jad Joubran
4950 Gulf Blvd., Unit 409
St. Pete Beach FL 33706

RE:    Beau Monde, Inc. – Unit 409

Dear Mr. Joubran:

As you know, this Firm represents the Beau Monde, Inc. (the "Association"), the not-for-profit Florida corporation which operates and maintains the Beau Monde condominium community, in which you own the above unit.

In that capacity, the Board of Directors has asked me to contact you, on behalf of the Association, regarding violations of the Association's governing documents. Accordingly, I am providing the following:

1.    I have been informed that members of your family have repeatedly walked your dog, previously approved by the Association as an emotional support animal ("ESA")/reasonable accommodation for a disability, on a leash throughout the condominium building and on the Condominium Property, instead of carrying the dog or using a carrier. As you know, when you were approved to have an ESA on Condominium Property as an accommodation pursuant to the Federal and Florida Fair Housing Acts, you agreed to follow certain rules relating to your animal. I understand Management has spoken with you regarding this issue, to no avail.

I further understand that, on June 6, 2023, your dog was observed relieving itself on the side of the path into the first floor garage.

The Association's Rules Related to Accommodations for Disabilities Under the Fair Housing Laws state in pertinent part: "There is no designated animal area on the property. _The animal is to be walked outside of the Condominium Property_. _The resident/guest is required to carry the animal or use a carrier throughout the building_." (emphasis supplied)

In addition, the Rules state that: "Any violations of these Rules may result in the removal of the animal from the Condominium Property."

2.    I have also been informed that you have repeatedly engaged in confrontational, threatening, and harassing behavior towards members of the administration, in incidents occurring on June 5, and June 19 and/or 20, 2023, regarding your recently-approved ESA, where, among other things, you threatened to take legal action against the Association.

_Anne Hathorn Legal Services, LLC_
_150 2nd Avenue North, Suite 1270_
_Saint Petersburg FL 33701_

727.895.5060
anne@annehathorn.com
www.annehathorn.com



Paragraph 18(c) of the Declaration of Condominium (the "Declaration") prohibits members from "commit[ting] or permit[ting] any nuisance, immoral or illegal act in his unit or on the common elements."

Your actions and behavior referenced above constitutes violations of the above provisions of these Rules, and the Declaration.

The Declaration, Rules, and other documents which govern the Association and its members, constitute a contract by which you agreed to abide when you purchased your unit, and your failure to do so subjects you to the same liability you would have in the breach of any contract. *__Therefore, please accept this letter as formal demand that you immediately commence following all rules relating to your ESA, including but not limited to carrying the animal or using a carrier at all times when the animal is outside of your unit and only walking the animal off-property; and that you immediately and permanently cease and desist from any further nuisance, harassing, threatening behavior towards the Association's Manager and all Board members.__*

Should you continue to fail to follow the rules relating to your ESA, the Board intends to exercise its right to demand removal of the animal from the Condominium Property. Additionally, further violations will result in the Board of Directors evaluating all remedies available to the Association, up to and including an action in Circuit Court and/or mediation, to force you to comply with the Association's Governing Documents. The Association, as prevailing party, will be entitled to recover its attorneys' fees and costs from you.

As owner of the unit, you are responsible for complying with all requirements of the Association Governing Documents.

If you do not understand your legal rights, please contact an attorney who is a member of the Florida Bar.

The Board of Directors is required to enforce all provisions of the Association Governing Documents, and the Board will not hesitate to do so in this matter.

Very truly yours,

Anne M. Hathorn, Esq.
For the Firm

AMH

cc:   Board of Directors

**DETERMINATION OF REASONABLE CAUSE**

**DATE:**            December 8, 2023

**CASE NAME:**    Jad Joubran v. Beau Monde, Inc./Castle Mgmt., LLC

**CASE NUMBER:**    HUD No.:04-23-5313-8/PCOHR No.: PC-23-039

## I.   JURISDICTION:

A complaint was filed timely on August 9, 2023, alleging that the complainant was injured by a discriminatory act. The Complainant Jad Joubran (hereinafter "CP Joubran") alleges that the Respondent subjected him to discriminatory terms and conditions and denied his Reasonable Accommodation request on the basis of disability, in violation of sections 804(f)(2) and 804(F)(3)(b) of Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Act of 1988 and Chapter 70 of the Pinellas County Code of Ordinances (Chapter 70).

The most recent act is alleged to have occurred on June 14, 2023, and is continuing. The respondent housing provider is Beau Monde, Inc. (hereinafter "RP Beau") and the respondent property management company is Castle Management LLC, d/b/a Castle Group (hereinafter "RP Castle"). The respondent does not receive federal funds.

All jurisdictional requirements have been met.

## II.   COMPLAINANT'S ALLEGATIONS

CP Joubran and his wife Roula Joubran (AP Roula) belong to a class of persons whom the Fair Housing Act (the Act) protect because they are involved in a protected activity. CP Joubran and AP Roula own the property located at Gulf Blvd. Apt. 409 St. Pete Beach FL 33706. The property is governed by Beau Monde Inc. (RP Beau) and managed by Castle Group (RP Castle). CP Joubran states that he requested a reasonable accommodation to walk his support animal (SA) in the common areas and his request was denied.

On May 9, 2023, CP Joubran received a letter from Deborah Ippolito (RP Ippolito) (Property Manager) authorizing the support animal. CP Joubran was given a set of rules that indicate that the animal must be carried in the common areas, nor walked outside. CP Joubran states that the animal weighs 40 pounds and due to his disability, he is unable to carry the animal. CP Joubran then met with Kay Belface (last name revealed during the investigation) at the manager's office to discuss how the rules and regulations make it impossible for him and AP Roula to live and enjoy the property. CP Joubran then notified her that he had done extensive research and forwarded to RP Beau's attorneys asking for a review of the research in order to justify the reasonable accommodation request.

A week later, AP Roula was walking the dog and was approached by two board members who started asking questions regarding the SA. AP Roula answered as much as she could, however felt harassed by the board members who consistently asked who the SA was for and other disability related questions that were not pertinent to AP Beau members. On June 30, 2023, CP Joubran received letter from the attorneys for RP Beau advising that he was not in compliance of

the rules and regulations indicating that the SA was now a liability. RP Beau's attorney advised CP Joubran that either he complied with the regulations regarding the animals, or that the animal would have to be removed. CP Joubran states that the letter sent by the attorney is a denial of the reasonable accommodation.

## III. RESPONDENTS' DEFENSES:

As their defense, RP stated, "After registering the emotional support animal with the Association, Complainant failed to submit a picture of the animal, failed to submit vaccinations of the animal and failed to properly attend to the animal's excretions. Additional violations of the rules and regulations were noted by the Association including:

    a. Members of Complainant's family have repeatedly walked the emotional support animal on a leash throughout the condominium building and on the Condominium Property, instead of carrying the dog or using a carrier as required by the rules and regulations. Management for the Respondents spoke to Complainant regarding this issue, but to no avail.

    b. On June 6, 2023, the Complainant's ESA was observed relieving itself on the side of the path into the first-floor garage in violation of the Rules and Regulations.

    c. Complainant engaged in confrontational, threatening, and harassing behavior towards members of the Respondents, in incidents occurring on June 5, June 19 and/or 20, 2023, regarding his recently approved ESA, where, among other things, Complainant threatened to take legal action against the Association.

    d. The Complainant received a letter from the Association's legal counsel on June 30, 2023, further detailing these concerns and violations by Complainant with a request for immediate compliance.

The factual record will demonstrate that the Association has not discriminated against the Complainant in any way whatsoever and has instead sought to balance the interests of the Complainant with those of other unit owners. The rules and regulations regarding the emotional support animals imposed on Mr. Joubran, as set forth in Respondent's May 9, 2023, letter, are consistent with the rules and regulations applied to other owners. If the Respondent did not impose such rules on Mr. Joubran, this may imply discrimination against other owners who have also sought ESAs prior to Mr. Joubran.

Respondents admit that Complainant received an approval letter for his emotional support animal on May 9, 2023, which included a set of rules and regulations. Respondents are unaware of the weight of the ESA and have not been provided any information related to physical disabilities of Complainant that would prevent his carrying of the ESA, as required by the rules and regulations.

Respondents deny that Kay Belfance and Rose Noritake asked any questions regarding the ESA in their interaction with Roula Joubran, which was cordial and professional. To the contrary, during this interaction, Roula Joubran volunteered that the dog was her ESA.

Respondents admit that Complainant, in an agitated, harassing, and intimidating manner, corned Ms. Ippolito and Ms. Belfance at the manager's office, but deny that the rules and regulations make it impossible to live and enjoy the property.

Respondents further deny that any research was provided and that an accommodation was requested. Respondents further deny that Ms. Belfance asked any specific questions regarding the ESA. Respondents admit that a June 30, 2023, letter was sent to Complainant from the Association's counsel. Respondents deny that any request for an accommodation was made by Complainant to be excused from carrying the ESA through the property, as required by the rules and regulations, adding that the CP suffered from a non-physical disability.

Pursuant to further questions, RP Beau provided further information indicating two other animals had been allowed to be walk instead of being carried. One animal, the visiting daughter of a resident, was stated to be a service animal that RP Beau 'did not view as required to comply because the service animal was working for the handler and could not do so being carried', and the 2nd was an animal whose resident owner's health condition had changed and obtained a written and approved waiver to the carrying rule in 2015.

## IV. FINDINGS:

Findings:

| | |
|---|---|
| 6/13/2021 | CP Joubran obtains animal (dog). |
| Feb. 2023 | CP Joubran states he is assaulted by another respondent building resident, without punishment from RP Beau. (CP Joubran later argued this person should have been sent a warning letter by the board). |
| 3/1/2023 | RP Beau sends warning letter to CP Joubran about moving furniture during unpermitted hours. This was related to the above incident. |
| 3/23/2023 | Dr. note for both CP Joubran and wife AP Roula's request for a support animal, which Respondent initially rejected. |
| 5/9/20232 | CP Joubran provides further information for himself, and RP Beau sends letter approving CP Joubran's support animal. CP Joubran provides proof of vaccinations. |
| 6/1/2023 | CP Joubran arrives at RP Beau complex with support animal for the 1st time. |
| 6/5/2023 | CP Joubran emails property manager Debbie RP Ippolito about encounter wherein RP Ippolito allegedly told AP Roula to use side stairwells and carry doctor's notes; CP Joubran objects and states he will not do this in the email. |
| 6/6/2023 | CP Joubran emails link about FHA and support animals to RP Ippolito, asking for clarification of their rules.<br>2nd week of June, CP Joubran's wife is asked by Board member Rose Noritake (Treasurer) and Kay Belfance (Secretary) who the dog is for/If the wife cleans up.<br>3rd week of June, CP Joubran has meeting with Kay Belfance and Debbie about the restrictive rules. |
| 6/19/2023 | Prop. Manager Ippolito emails Board President Brian and attorney Anne Hathorn requesting update for CP Joubran's previous inquiry about the restrictive support animal rules. |
| 6/30/2023 | Respondent RP Beau's attorney Anne Hathorn sends warning letter to the CP Joubran. |
| 7/8/2023 | CP Joubran returns home to Canada with the dog. |

## V.  ANALYSIS

In summary, CP Joubran alleged this was his first visit to the building with his support animal, approved by RP Beau on 5/9/2023.

He stated that shortly after arriving at the Respondent property on or about 6/2/2023, AP Roula was approached by property manager RP Ippolito who communicated to her that she should use the stairwell and to carry her doctor's note with her while with the dog. CP Joubran stated that after this occurrence, he emailed the property manager on 6/6/2023 to indicate he could not carry the animal, would not use the stairwell, and would not carry a doctor's note while walking the dog. He asked for clarification on these instructions and sent another email dated 6/6/2023, to property manager RP Ippolito arguing that Federal Fair Housing law allowed his support animal to walk on property and to have access to the common areas. On this email he attached an article written by law firm Poliakoff advising clients that restricting support animals on community property was possibly unlawful.

CP Joubran alleged that during the 2nd week of June, board members Rose Noritake and Kay Belfance approached his wife who was walking the dog and questioned if the ESA dog were for her, and whether she was retrieving the pet waste. After hearing of this encounter, CP Joubran met with Kay Belfance and RP Ippolito at the complex to ask them about this encounter with his wife. CP Joubran asked they not approach his wife, but him instead. He stated that Belfance then asked him who the dog was for. CP Joubran felt this question was inappropriate and replied without answering the question. He stated the encounter was civil and courteous.

CP Joubran alleged that on 6/19/2023, RP Ippolito followed up with the Board President, Brian Bodor and respondent attorney Hathorn by email about CP Joubran's concerns seeking clarification of the current support animal rules. Specifically, RP Ippolito wrote that CP Joubran felt that RP Beau's current support animal restrictions were "at odds" with the legally related article he had submitted and requested an update.

Afterwards, on 6/30/2023, CP Joubran was sent a letter from RP Beau, through their attorney, indicating they would take legal action to remove the animal and/or undertake additional actions to stop any further rules violations allegedly related to the dog, such as his failure to carry or carriage the animal.

The 6/30/2023 letter from attorney Hathorn to CP Joubran cited the violations as repeatedly walking the dog through common grounds, instead of carrying/strolling the animal, that the animal had relieved itself on community property in violation of the rules and that CP Joubran had engaged in confrontational, threatening, and harassing behavior towards members of the administration in incidents occurring on June 5, June 19 and/or 20, 2023.

The letter threatened legal action if he did not begin carrying/strolling the animal until off property, and to cease and desist any further nuisance, harassing, threatening behavior towards the association's manager and all board members.

After receiving the letter CP Joubran spoke with RP Ippolito and confirmed with RP Ippolito that he had not been rude with her during their encounter with Belfance about his support animal. Thus, CP Joubran could not understand why he had received this letter.

Regarding the analysis and as an initial matter, during the investigation CP Joubran clarified he had no actual articulated harm as part of the different terms and conditions allegation due to disability in violation of 804(f)(2).  Regarding the elements of a claim of different terms and conditions, the Prima Facie elements must establish the following:

1.    The complainant is a member of a protected class.
2.    The complainant was the respondent's tenant.
3.    The respondent imposed unfavorable or less favorable terms or conditions on the complainant's tenancy.
4.    The respondent did not impose such a terms or conditions on similarly situated tenants not of the complainant's protected class.

When asked what harm comprised the different terms allegation, he cited various possibilities but never firmly settled on one of them. Thus, there is no allegation of different terms and conditions due to disability in this investigation.

Regarding the issue of a denial of a reasonable accommodation, it is noted that CP Joubran's support animal was approved by RP Beau on 5/9/2023.  The issue in the case is whether CP Joubran was subjected to unlawful restrictions on his animal.

To establish a violation of the Act/Ordinance, the investigation must demonstrate he was a person with a disabled need for the animal and that the current rules were unduly restrictive. Regarding the elements of an accommodation claim, the Prima Facie elements must establish the following:

1.    The complainant is a person with a disability.
2.    The respondent knew or reasonably should have known that the complainant is a person with a disability.
3.    The complainant requested a reasonable accommodation in the rules, policies, practices, or services of the respondent.
4.    The requested accommodation may be necessary to afford the complainant an equal opportunity to use and enjoy the dwelling.
5.    The respondent refused the complainant`s request to make such accommodation or   failed to respond or delayed responding to the request such that it amounted to a denial.

Regarding elements #1, #2, #3, and #4, it is undisputed that CP Joubran submitted a request establishing he was disabled and had a nexus need for the animal. CP Joubran submitted a note from Dr. Alma Roldan, Ph.D., C. Psych, dated 5/3/2023, which indicated he was under her care and had psychological symptoms that impacted his daily functioning. The note stated that the animal played a significant role in his treatment and recovery to help him deal with daily stressors and anxiety symptoms.

Regarding element #5, CP Joubran was not denied the animal but denied the ability to walk the animal on common property. Upon review, it is concluded that RP Beau's support animal rules requiring that the animal be carried was unduly restrictive without any compelling health or safety justification.

Specifically, RP Beau's written rules were:

> "Within one week of notification of approval, a picture of the animal is to be submitted to the property manager for identification of the animal on premises.
>
> Within one week of notification of approval, the resident/guest must provide proof of animal inoculations. Verification of inoculation must be provided on an annual basis to the property manager.
>
> The animal cannot become a nuisance, including but not limited to excessive barking, aggressive behavior, biting, pet owner failure to pick up waste, etc.
>
> There is no designated animal area on the property. The animal is to be walked outside of the condominium property.
>
> The resident/guest is required to carry the animal or use a carrier throughout the building.
>
> The animal is not allowed on the patio or in the swimming pool or gym.
>
> Some residents in the building may have allergies to animals, therefore washing and drying of any article which is used by the animal is prohibited in the laundry rooms.
>
> Animals are not allowed in the laundry rooms."

Regarding CP Joubran's allegations of unlawful conduct by the RP, RP Beau had multiple defenses, some of which were not applicable.

Regarding their defense that CP Joubran had not complied with the initial registration of his support animal, CP Joubran produced an email from RP Ippolito dated 5/9/2023, stating "I received your service animal's vaccine record, thank you very much. That is all I needed on my end." Thus, CP Joubran had effectively complied with all entry requirements and was told nothing else was needed from him by RP Ippolito on 5/9/2023.

Regarding RP Beau's contention that on 6/6/2023, the Complainant's ESA was observed relieving itself on the side of the path into the first-floor garage in violation of the Rules and Regulations, however, CP Joubran denied this. He stated that they've always retrieved the waste and, further, CP Joubran asked how urine could be cleaned if it had occurred. During an interview with RP Castle property manager, RP Ippolito; she acknowledged the dog had peed, not defecated. However, it is noted the area is still RP Beau's property of which the rules do not allow the animals to relieve themselves at. In light of the crowded beach area with no

neighboring parks, it is concluded that it would be reasonable to allow RP Beau residents to use the area for their dogs, subject to properly retrieving their waste.

Regarding whether others had been sent similar notices for their animals having gone to the bathroom on common property, RP Beau denied they knew of other instances.

Regarding RP Beau's contention the animal had been repeatedly walked the animal on the Condominium Property, instead of carrying/use of stroller as required by the rules, this was acknowledged as accurate by CP Joubran. He stated that at times his son or wife would walk the animal out the unit and off the property, but only to exit and enter the condominium property and not elsewhere. CP Joubran denied taking the animal to other common areas but argued he should have that right. He stated his 40-pound dog was too heavy for him or his wife to carry, a danger to do so and a rule that was not compliant with the Fair Housing Act (FHA).

Regarding restrictive policies, caselaw on the issue of restrictions on assistance animals is mixed in allowing restrictions. Some cases have found a need to balance the interests between non-animal residents and those with assistance animals, and other case(s) have found damages when the animal was denied access to the main elevator.

In addition, the HUD Guidance (FHEO Notice: FHEO-2013-01), issued on April 25, 2013, clearly stated that animals could go wherever the person with the disability went. The Guidance indicated that, "Where the answers to questions (1) and (2) are "yes," (providing Nexus assistance to an established disability) the FHAct and Section 504 require the housing provider to modify or provide an exception to a "no pets" rule or policy to permit a person with a disability to live with and use an assistance animal(s) in all areas of the premises where persons are normally allowed to go, unless doing so would impose an undue financial and administrative burden or would fundamentally alter the nature of the housing provider's services. The request may also be denied if: (1) the specific assistance animal in question poses a direct threat to the health or safety of others that cannot be reduced or eliminated by another reasonable accommodation, or (2) the specific assistance animal in question would cause substantial physical damage to the property of others that cannot be reduced or eliminated by another reasonable accommodation."

It is noted that the Guidance was updated, FHEO-2020-01, issued on January 20, 2020, wherein it was indicated that "This guidance replaces HUD's prior guidance, FHEO-2013-01, on housing providers' obligations regarding service animals and assistance animals. In particular, this guidance provides a set of best practices regarding the type and amount of documentation a housing provider may ask an individual with a disability to provide in support of an accommodation request for a support animal, including documentation of a disability (that is, physical or mental impairments that substantially limit at least one major life activity) or a disability-related need for a support animal when the disability or disability-related need for the animal is non-obvious and not known to the housing provider."  Thus, although replaced, the new guidance was completely silent on the issue of animal access to common area property and did not necessarily invalidate the prior guidance's access guidance.

In this instance, when asked, RP Beau stated they could not remember the rationale requiring animals to be carried. Thus, even though it is believed there would not be many objective reasons justifying that residents to carry their animals, RP Beau did not even articulate a basis that could be analyzed. As carrying animals can be a burden to some, this requirement is not concluded to be lawful without some sincere health or safety rationale. Further, CP Joubran had raised the issue and articulated his inability to do so, placing RP Beau on notice of this need. As argued by CP Joubran, due to his wife's small frame and him being over 60 years of age, and the dog weighing over 40 pounds, he stated it was obvious he could not carry the dog and made it clear the rule of carrying the animal was not consistent with FHA law as this would be equivalent to requesting an accommodation to the rule requiring that animals be carried.

Regarding RP Beau's defense that these rules were imposed on all animal and that CP Joubran should have raised an additional reasonable accommodation request to not carry the animal, CP Joubran disagreed. As indicated above, there is no objective need to require persons to carry their animals. Further, CP Joubran on June 5, 2023, had raised his disagreement with RP Ippolito's communication that they use the stairs with the dog, and wrote that if this were the practice to let him know so he could take it up with the board. Thus, CP Joubran documented disagreeing with the need to walk the animal on common property. Further, he argued their approval letter for the animal did not indicate he could make such a request.

On 6/06/2023, CP Joubran had informed RP Beau through an email to RP Ippolito, of his belief the carrying rule/limits on common area was unlawful and shared with RP Beau an article from the Poliakoff law firm that opined that "once an animal has been verified, it really should be allowed to go anywhere the resident is allowed to go, with limited exceptions-that is the express nature of the law. Now, there are certainly some guidelines you could implement that would be considered "reasonable-for example I do not think you need to allow an animal to swim in your pool, as it likely violated a number of health laws. But I also think limiting such animals to only the resident's unit and the dog walking area would likely but subject to challenge."

CP Joubran further spoke about the unduly restrictive rules with RP Ippolito and Board member Belfance in RP Ippolito's office in June 2023, where he asked that the rules be reviewed.

Lastly, CP Joubran followed up again with RP Ippolito, resulting in her 6/19/2023, email to Attorney Anne Hathorne which stated, "Jad had inquired about the legal excerpts he had forwarded to me via email. In particular these opinions were at odds with our current restrictions on ESA. He wanted written clarification on the position of the Beau Monde Association in light of the information he submitted. Could you please provide an update."

In light of RP Beau already knowing of his disability status and inability to carry the animal, this was effectively a request to not impose the rule on him.

CP Joubran had clearly communicated and expressed to RP Beau that the current restrictions were unlawful, which included the need to carry/use of stroller the animal at all common areas. However, he never heard back regarding his opposition to the rule and request for clarification. Instead, he received a letter that threatened removal of the animal and/or other legal action.

Regarding the CP Joubran's allegation that two board members had engaged in improper questioning, RP Beau denied that Kay Belfance and Rose Noritake asked any questions regarding the ESA in their interaction with Roula Joubran, which was cordial and professional. To the contrary, RP Beau asserted that during this interaction, Roula Joubran volunteered that the dog was her ESA.

During the investigation both Rose Noritake and Kay Belfance were interviewed and denied having asked any questions. Both stated it had been a chance encounter and that AP Roula had volunteered the information in good faith. However, this was disputed by CP Joubran and AP Roula. Although there is regulatory support for the prohibition of disability inquiries, at 100.202 (C) General prohibitions against discrimination because of handicap, it is concluded this singular instance would not be a violation. As worded, section 100.202 states, "It shall be unlawful to make an inquiry to determine whether an applicant for a dwelling, a person intending to reside in that dwelling after it is so sold, rented, or made available, or any person associated with that person, has a handicap or to make inquiry as to the nature or severity of a handicap of such a person. However, this paragraph does not prohibit the following inquiries, provided these inquiries are made of all applicants, whether or not they have handicaps."

Notably, there is a dispute as to what occurred. Secondly, the inquiry was not about AP Roula's nature or severity of disability, but allegedly who the support animal was for. Animals are prohibited at the building and both CP Joubran and AP Roula had initially requested animals, but both were denied. Once CP Joubran provided further information the request was approved.

As such, it was possibly unclear at that time who had the legal right to the animal. Conversely, CP Joubran is the person with the right to the animal, and not necessarily AP Roula, as she was never approved for the animal after the initial denial. Lastly, this singular encounter is concluded not to rise to the level of actionable harassment and/or imposed different terms and conditions.

Regarding RP Beau's contention that no research was provided by CP Joubran, this is inaccurate as CP Joubran provided the email with the attachment sent to RP Beau at the time. This receipt was reflected by RP Ippolito in her 6/19/2023 email to RP Beau asking for follow up on the "legal excerpts he had forwarded to me."

Regarding RP Beau's contention that CP Joubran engaged in "confrontational, threatening, and harassing behavior towards members of the Respondents, in incidents occurring on June 5, and June 19 and/or 20, 2023, regarding his recently approved ESA, where, among other things, Complainant threatened to take legal action against the Association", CP Joubran absolutely denied this.

During the investigation, the persons who complained to form the basis of the 6/30/2023 Violation notice, RP Beau cited RP Ippolito for the 6/6/2023 event, Rose Noritake for the 6/5/2023 event, and Kay Belfance for the 6/19/2023 event.

During the investigation both Noritake, Belfance and RP Ippolito were interviewed regarding this. Belfance recounted how CP Joubran had situated himself in the doorway during the 6/19/2023 discussion, which she felt intimidating but denied having complained about this until

after receipt of the current fair housing complaint. Noritake confirmed that she had complained of the dog being walked through the common areas but denied having complained of CP Joubran as having been harassing, threatening or confrontational with her. When asked if she had ever spoken to CP Joubran, she replied, "maybe the occasional hello. That's it."

During interview Noritake indicated a complaint email about CP Joubran had been sent by RP Ippolito at the time. RP Ippolito confirmed she had complained of CP Joubran to RP Beau board President, Brian Bodor around June 7, and June 19th, 2023.  Regarding whether CP Joubran had been harassing, threatening of confrontational with her or anyone others she knew of, she denied he had. However, she confirmed she had complained of his persistent style to Bodor, which she described as "harassing" during the investigative interview. Further, during the investigation RP Beau submitted two emails sent by RP Ippolito, referenced by Noritake above, wherein RP Ippolito complained of CP Jouban to "Brian", the 1st time on 6/7/2023, and the 2nd on 6/28/2023.

In the first email, dated 6/7/2023, RP Ippolito recounted how she had seen a lady and two young persons walking a dog through the lobby. She informed the person she needed to carry the animal, whereupon the woman replied the dog was too heavy. RP Ippolito then noted the person could walk the dog out the side of the building to avoid issues. Later that morning CP Joubran visited RP Ippolito and told her she had insulted his wife, reportedly stated that she did not have common sense and was offensive to him. RP Ippolito also wrote, "he also threatened legal action if I addressed anyone in his family."  She later recounted how she had seen the dog "do its business on the side of the path into the first-floor garage." RP Ippolito wrote she did not say anything at the time, but that CP Joubran later visited her wherein he wished to speak with her immediately while she was busy working with contractors. When she indicated she was busy he reportedly criticized her performance. RP Ippolito then wrote, "Brian it is my training that if an Owner says they are getting a lawyer, then I cease to directly communicate with them. Since Jad is basically harassing me and is sending communique about lawyers etc. At this point, since he has been so negative and insulting, I would prefer to just tell him to contact his lawyer on any issues he has with the Association rules and the timing allotted to process his requests. What are your thoughts on this?"  Thus, RP Ippolito had clearly complained of CP Joubran.

In the 2nd email, dated 6/28/203, RP Ippolito wrote, "I do not want to give Jad a reason to retaliate against me. Please have Ann remove the part where it states behavior towards me and remove my name from this letter. Thank you, Deborah".  Thus, RP Ippolito had complained of CP Joubran and was the basis for the issuance of the letter.

In light of corroboration that CP Joubran engaged in unfavorable conduct, it is concluded the 6/30/2023 letter is only a continuation of the unlawful restrictions mandating CP Joubran carry his animal, and not a separate violation.  There appears to be sufficient basis indicating that the animal went to the bathroom on property, and that CP Joubran was perceived to be persistent at times. However, it is concluded the imposition of the carrying rule on CP Joubran, in light of his express communication he could not do so, would be an unlawful restriction on him and use of the animal. Thus, element #5 has been met, as CP Joubran was denied the ability to use and enjoy the property by being able to walk his animal. It is noted that after receipt of the 6/30/2023 letter which threatened legal action if he continued walking the animal, CP Joubran left the RP Beau property to return to Canada and has not returned.

## VI. CONCLUSION:

Therefore, based on the foregoing evidence and analysis of the investigation, set forth above, it is recommended that "Reasonable Cause" exists to believe that the Respondent engaged in illegal discriminatory housing practice in violation of Section 804(f)(3)(B) and "No Reasonable Cause" for violation of Section 804(f)(2) of Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1988, and Article II, Division 3 of Chapter 70 of the Code of Ordinances of Pinellas County.

## VII. ADDITIONAL INFORMATION

Notwithstanding this determination by the Pinellas County Office of Human Rights, the Fair Housing Act provides that the complainant may file a civil action in an appropriate federal district court or state court within two years after the occurrence or termination of the alleged discriminatory housing practice. The computation of this two-year period does not include the time during which this administrative proceeding was pending. In addition, upon the application of either party to such civil action, the court may appoint an attorney, or may authorize the commencement of or continuation of the civil action without the payment of fees, costs, or security, if the court determines that such party is financially unable to bear the costs of the lawsuit.

The Department's regulations implementing the Act require that a dismissal, if any, be publicly disclosed, unless the respondent requests that no such release be made. Such request must be made by the respondent within thirty (30) days of receipt of the determination to the Field Office of Fair Housing and Equal Opportunity at the address contained in the enclosed summary. Notwithstanding such request by the respondent, the fact of a dismissal, including the names of all parties, is public information and is available upon request.

A copy of the final investigative report can be obtained from the Pinellas County Office of Human Rights:

*Betina Baron*

Betina Baron, Compliance Manager

12/19/23

Date

EXHIBIT "G"

# NOTICE

WITH THE ISSUANCE OF THE ATTACHED CHARGE OF DISCRIMINATION BY THE PINELLAS COUNTY OFFICE OF HUMAN RIGHTS, CERTAIN RIGHTS AND RESPONSIBILITIES HAVE BEEN GIVEN TO YOU. THE FOLLOWING PARAGRAPHS ARE AN OUTLINE OF THOSE RIGHTS. PLEASE READ THE PROVISIONS OF THIS NOTICE CAREFULLY AND, IF YOU DO NOT UNDERSTAND ITS CONTENTS, OR IF YOU HAVE ADDITIONAL QUESTIONS, CONTACT THE OFFICE OF HUMAN RIGHTS, 400 SOUTH FORT HARRISON AVENUE, 5TH FLOOR, CLEARWATER, FLORIDA 33756, TELEPHONE NUMBER (727) 464-4880.

## I.    ELECTION OF CIVIL ACTION.

UNLESS ONE OF THE PARTIES ELECTS WITHIN TWENTY (20) DAYS FROM THE DATE THEY RECEIVE THIS NOTICE TO HAVE THE CLAIMS ASSERTED IN THIS CHARGE DECIDED IN A CIVIL ACTION IN FEDERAL OR STATE COURT, AN ADMINISTRATIVE HEARING WILL BE AUTOMATICALLY SCHEDULED FOR A TIME AND PLACE DESIGNATED BY ORDER OF A DOAH HEARING OFFICER. Such administrative hearing will be conducted in accordance with Chapter 120, Florida Statutes, and the Pinellas County Human Rights Ordinance. Pinellas County will provide an attorney to commence and maintain the action on behalf of the aggrieved person. The DOAH hearing officer may order appropriate relief, including actual damages, reasonable attorney's fees, costs, and other injunctive relief, and may also assess a civil penalty.

If any person elects to proceed in federal or state court, Pinellas County will provide an attorney to commence and maintain this action on behalf of the aggrieved person. Additionally, the aggrieved person retains the right to be represented by counsel of his/her own choice at such person's own expense. Any party may choose to have the case decided by a jury. The federal or state court may award injunctive and/or other equitable relief as well as monetary relief (including actual and punitive damages). The election to proceed in federal or state court must be filed with the Pinellas County Office of Human Rights not later than the 20th day after the date of receipt by the electing person of the determination of reasonable cause and charge of discrimination. Such election shall not be considered filed until received by the Pinellas County Office of Human Rights at the following address:

Director, Pinellas County Office of Human Rights
400 S. Ft. Harrison Avenue, Fifth Floor
Clearwater, FL  33756

Persons making such election must also serve written notification of the election on the individuals listed below:

COMPLAINANT:          Jad Joubran
                      6538 Spinnaker Circle
                      Mississauga, ON Canada L5W1R1

RESPONDENTS:          Beau Monde Inc.

Page 1

12270 SW 3rd Street, Ste 200
Plantation, FL 33325
Represented by: Anne Hathorn,
Anne Hathorn Legal Services, LLC
150 2nd Ave N. #1270
St. Petersburg, FL 33701

Castle Management LLC d/b/a Castle Group
12270 SW 3rd Street, Ste 200
Plantation, FL 33325
Represented by: Joseph Riopelle
Boyd Richards
400 N Ashley Drive, Ste 1150
Tampa, FL 33602

OFFICIALS:          Jeffery Lorick
Office of Human Rights
400 S. Ft. Harrison Avenue, Fifth Floor
Clearwater, FL 33756

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the "Determination of Reasonable Cause and Charge of Discrimination" and the accompanying "Notice" were sent on this _18th_ day of April, 2024, by first class mail, postage prepaid, and by certified mail, return receipt requested, to the following:

Jad Joubran
6538 Spinnaker Circle
Mississauga, ON Canada L5W1R1

Anne Hathorn,
Anne Hathorn Legal
Services, LLC
150 2nd Ave N. #1270
St. Petersburg, FL 33701

James Kushner
Gulfcoast Legal Services, Inc.
501 1st Avenue N., Ste 420
St. Petersburg, FL 33701

Joseph Riopelle
Boyd Richards
40 N Ashley Drive, Ste 150
Tampa, FL 33602

Jeffery Lorick, Director
Pinellas County Office of Human Rights
400 S. Ft. Harrison Ave., Fifth Floor
Clearwater, FL 33756
(727) 464-4880

Page 2



**Pinellas County**
OFFICE OF
HUMAN RIGHTS

Jeffery Lorick, Director

JAD JOUBRAN

v.

BEAU MONDE, INC., AND CASTLE MANAGEMENT LLC

HUD CASE NO. 04-23-5313-8

PC CASE NO. 23-039

DETERMINATION OF REASONABLE CAUSE, NOTICE OF FAILURE TO
CONCILIATE, AND CHARGE OF DISCRIMINATION

I.    **JURISDICTION.**

Jad Joubran, aggrieved person, filed a complaint of housing discrimination on the bases of disability, failure to make reasonable accommodation and discriminatory terms, conditions, privileges of services and facilities with the Pinellas County Office of Human Rights (PCOHR) on August 9, 2023. PCOHR has been certified by HUD as substantially equivalent under federal law.

This Office, in conjunction with the Pinellas County Attorney's Office, has determined that reasonable cause exists to believe that a discriminatory housing practice has occurred in violation of the *Fair Housing Act Amendments of 1988* (*FHAA*), including, but not limited to, Sections 804(f)(3)(B) and 804 (f)(2). Therefore, the issuance of this charge of discrimination has been authorized.

II.    **SUMMARY OF ALLEGATIONS IN SUPPORT OF THIS CHARGE.**

Based upon the investigation of this complaint by the PCOHR, it has been determined that there is reasonable cause to believe Respondents engaged in a discriminatory housing practice based on their failure to make a reasonable accommodation for the Complainant. Respondent's facility rule for animals to be carried through the condominium property to be walked outside of the property is unduly restrictive on the Complainant due to his disability. Respondent denied Complaint's request to walk his emotional support animal through the property and threatened Complainant with removal of the animal and/or other legal action. Based upon these actions, there is reasonable cause to believe the Respondent violated the *Fair Housing Act Amendments of 1988* (*FHAA*), including, but not limited to, Sections 804(f)(3)(B) and 804 (f)(2).

We actively use feedback to constantly improve our delivery and provide you with
the best possible service. Please share your feedback with us in this quick survey.

https://www.surveymonkey.com/r/OHRCustomerSatisfaction



PLEASE ADDRESS REPLY TO:
Pinellas County Office of Human Rights
400 South Fort Harrison Avenue, 5th Floor
Clearwater, Florida 33756
PHONE: (727) 464-4880
FAX: (727) 464-4157
TDD: (727) 464-4062
WEBSITE: pinellascounty.org/humanrights

III.    **FINAL INVESTIGATIVE REPORT**.

    The information supporting this reasonable cause determination and charge is more specifically contained in the investigator's Final Investigative Report (FIR) completed for this complaint. A copy of the FIR will be provided to any aggrieved person and any respondent upon written request filed with Jeffery Lorick, Director, Pinellas County Office of Human Rights, 5th Floor, 400 S. Ft. Harrison Ave., Clearwater, FL 33756, telephone number (727) 464-4880.

IV.    **FAILURE TO CONCILIATE.**

    The Office of Human Rights offered to conciliate this complaint throughout the pendency of our investigation, and prior to our issuance of this determination, pursuant to Pinellas County Codes, §§ 70-145, 147. Based on our records, the parties either failed to volunteer to participate in conciliation, or such efforts were unsuccessful.

V.    **CONCLUSION**.

    Wherefore, based upon the above, the PCOHR, in conjunction with the Pinellas County Attorney's Office, and pursuant to *Pinellas County Code,* Sec 804(a) or (f), issues this charge of reasonable cause to believe that the Respondent engaged in unlawful housing discrimination on the bases of race and color in violation of the *Fair Housing Act Amendments of 1988* (*FHAA*), including, but not limited to, Section 804(f)(3)(B) and Section 804(f)(2)., and will pursue such relief on behalf of the aggrieved person as may be appropriate under the applicable fair housing laws and ordinances.

Respectfully submitted,

Jeffery Lorick, Director
Pinellas County Office of Human Rights

Jewel White, County Attorney
Pinellas County, Florida
315 Court Street, Sixth Floor
Clearwater, FL 33756
Phone: (727) 464-3354

DATE: 4-18-24

EXHIBIT "H"



To:     Director, Pinellas County Office of Human Rights
        400 S. Ft. Harrison Avenue, Fifth Floor
        Clearwater, FL 33756
        Also via email to jlorick@pinellas.gov

From:   James Alex Kushner

Re:     Jad Joubran v. Beau Monde, Inc. et al.
        HUD case number 04-23-5313-8
        PC case number 23-039
        ELECTION OF FEDERAL COURT

07 May 2024

Dear Mr. Lorick,

On 18 April 2024, your office issued a Determination of Reasonable Cause and Charge of Discrimination in the matter of *Jad Joubran v. Beau Monde, Inc. et al.*, determining that there was reasonable cause to believe that the Respondents to the complaint (Beau Monde, Inc. and Castle Management LLC) had engaged in unlawful discrimination.

Enclosed with that determination was a notice stating that, if any party wished to have the claims asserted in the charge decided in a civil action in federal court, the party would need to file said election with your office no later than twenty (20) days after the receipt of the determination of reasonable cause.

Your office also referred Mr. Joubran's case to our organization, and the undersigned has met with Mr. Joubran to determine his preference. With this letter, the undersigned, on behalf of Jad Joubran, informs you and all recipients of his election to have the matter adjudicated in federal court.

Please acknowledge receipt, and feel free to contact me with any questions you may have.

Sincerely yours,

James Alex Kushner
Managing Attorney, Housing

Cc:     Jad Joubran
        Anne Hathorn, Anne Hathorn Legal Services LLC
            (on behalf of respondent Beau Monde, Inc.)
        Joseph Riopelle, Boyd Richards
            (on behalf of respondent Castle Management LLC)

---


