UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAD JOUBRAN,

     Plaintiff,

v.                                 CASE NO. 8:25-cv-201-SDM-SPF

BEAU MONDE, INC., and
CASTLE MANAGEMENT, LLC,

     Defendants.
_____/

**ORDER**

     Asserting three claims of housing discrimination (Count I, II, and III) and a claim of retaliation (Count IV), Jad Joubran sues (Doc. 1) Beau Monde, Inc., and Castle Management, LLC. The defendants move (Doc. 7) to dismiss the complaint for duplicity and failure to state a claim. The plaintiff responds (Doc. 8) in opposition. In their motion, the defendants argue (1) that Counts I and II are duplicative of both each other and Count III, (2) that the plaintiff has not alleged that the Association's policy is facially discriminatory or alleged that Joubran submitted a request for further accommodation, and (3) that the complaint fails to allege facts constituting interference.

## BACKGROUND[1]

Joubran owns Unit 409 inside the condominium building at 4950 Gulf Boulevard, St. Petersburg Beach, FL 33706. (Doc. 1 at 3) Beau Monde owned the common areas of the property. (Doc. 1 at 3) Castle Group managed the property and interpreted and enforced the rules governing animals on the property. (Doc. 1 at 3)

Joubran and his wife, Roula Joubran, seasonally reside in Unit 409.  (Doc. 1 at 3) Joubran allegedly has "non-visible disabilities or mental impairments that substantially limit one or more of his major life activities." (Doc. 1 at 3) Joubran claims his impairments are "substantially alleviated" by his emotional-support dog. (Doc. 1 at 3) On May 9, 2023, Castle Group granted an accommodation to Joubran and allowed the dog on the property. (Doc. 1 at 14) As part of the authorization, Castle Group provided Joubran rules for keeping the dog, which include that the dog "cannot become a nuisance," that the dog must "be walked outside of the Condominium Property[,]" and that residents and guests are "required to carry the animal or use a carrier throughout the building." (Doc. 1 at 15) Because his dog weighs approximately forty pounds, Joubran allegedly cannot carry the dog without "notable physical discomfort." (Doc. 1 at 4) Joubran claims these obligations "interfere[] with his ability to use and enjoy the dwelling." (Doc. 1 at 4) Further, the dog becomes "agitated and fretful" when carried, which frustrates the dog's ability to emotionally support Joubran. (Doc. 1 at 5)

---

[1] The factual allegations in a complaint are assumed true and construed favorably to the plaintiff. *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016).

On June 1, 2023, Joubran and his wife travelled to their unit with the dog. (Doc. 1 at 5) Between June 1 and 5, the Castle Group property manager approached Mrs. Joubran and "advised" her of complaints about the dog. (Doc. 1 at 5) The property manager further "advised" Mrs. Joubran to use the stairs when travelling with the dog and to carry proof of eligibility for an emotional-support animal. Finally, the property manager "commented that it would be best [for the dog] 'to stay out of sight.'" (Doc. 1 at 5) On June 5, 2023, Joubran e-mailed the property manager about the conversation with his wife asserting Joubran's compliance with the requirements for his dog and rejecting the property manager's recommendations. (Doc. 1 at 16) The next day, Joubran again e-mailed the property manager, provided her with an article discussing emotional-support animals, and suggested she share the article with the board and "advise [him] if [he] misunderstand[s]." (Doc. 1 at 19) Further, Joubran stated that under the Fair Housing Act the dog should have unrestricted access to common areas and called the requirement to carry the dog in the lobby "unfair and risky[.]" (Doc. 1 at 19)

Following the e-mails, two of Beau Monde's board members approached Ms. Joubran and asked her questions about the dog. (Doc. 1 at 6) These questions concerned the dog's ownership, purpose, and cleanliness, questions which Mrs. Joubran found harassing. (Doc. 1 at 6) The next week, Joubran met with the Castle Group property manager and a Beau Monde board member, and Joubran requested "clarification" of the Beau Monde rules. (Doc. 1 at 6)

- 3 -

On June 30, 2023, Beau Monde's lawyer sent Joubran a letter notifying him of his violation of the rules governing walking the dog in a common area. (Doc. 1 at 20–21) The letter alleged that Joubran repeatedly engaged in "confrontational, threatening, and harassing behavior towards members of the administration . . . regarding [his] recently approved [emotional-support animal]." (Doc. 1 at 20) Joubran denies behaving confrontationally. (Doc. 1 at 24) The letter demanded that Joubran follow rules governing the dog and cease "any further nuisance, harassing, threatening behavior towards the Association's Manager and all Board members." (Doc. 1 at 21) Joubran and his wife returned to Canada with their dog on or about July 8, 2023. (Doc. 1 at 7)

On August 7, 2023, Joubran filed a housing discrimination complaint with the Pinellas County Office of Human Rights. (Doc. 1 at 7–8) On December 8, 2023, PCOHR issued a determination of reasonable cause and charged the defendants with engaging in unlawful housing discrimination in violation of the Fair Housing Act. (Doc. 1 at 22–36) Joubran elected to bring a civil action in federal court on May 7, 2024. (Doc. 1 at 37)

On June 17, 2024, the Beau Monde board of directors held a periodic meeting. (Doc. 1 at 8) Owners within Beau Monde are ordinarily notified of a meeting; Joubran received no notice and did not attend. (Doc. 1 at 8–9) The board discussed the rules on animals and discussed an earlier complaint by Joubran. (Doc. 1 at 9) Joubran claims the lack of notice was deliberate because the discussion cast Joubran in "a negative light." (Doc. 1 at 9) The explanation by a member of the Castle Group

- 4 -

managerial team for the failure to notify Joubran allegedly changed but is not included in his complaint. (Doc. 1 at 9)

## DISCUSSION

A complaint must include enough facts to state a facially plausible claim to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff's allegations must amount to "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## COUNTS I & II

Count I alleges that the property manager's recommendation that he and his wife use the stairs when travelling with their dog amounted to discrimination, and Count II alleges that the requirement that Joubran carry his dog in a common area and impede the dog's ability to support him amounted to discrimination. Joubran bases his claims on 42 U.S.C. § 3604(f)(2), which provides in relevant part that "it shall be unlawful . . . [t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such a dwelling, because of a handicap." These allegations state no claim distinct from Count III. Rather, the allegations are — at most — evidence of the alleged denial of a reasonable accommodation. Therefore, both Count I and Count II fail to allege a claim distinct from Count III.

- 5 -

COUNT III

To state a claim under Section 3604(f)(3)(B) of the Fair Housing Act, a plaintiff must plead (1) that he is disabled within the meaning of the Act, (2) that he requested a reasonable accommodation for his disability, (3) that the requested accommodation was necessary to afford him an opportunity to use and enjoy the dwelling, and (4) that the defendant refused the requested accommodation. *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1225 (11th Cir. 2016). Under 45 U.S.C. § 3602(h)(1), a person is disabled if afflicted with "a physical or mental impairment which substantially limits one or more of such person's major life activities." Joubran formulaically quotes this conclusory statutory language in his complaint and fails to allege the first element of Count III. Also, Joubran fails to allege that he informed Beau Monde that he could not comply with the rule and that he requested an accommodation to allow his dog to walk in the common areas of the building. Rather, Joubran provides e-mails characterizing the rule as "unfair and risky" and claims he repeatedly asked for "clarification" of the rules. The defendants could not refuse to accommodate if Joubran failed to request an accommodation.  Count III of the complaint fails to state a claim.

COUNT IV

Section 3617 of the Fair Housing Act provides in pertinent part that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." To state an

- 6 -

interference claim, the plaintiff must allege (1) that he engaged in a protected activity, (2) that the defendant subjected him to interference, and (3) that the protected activity caused the interference. *Philippeaux v. Apt. Inv. & Mgmt. Co.*, 598 Fed. Appx. 640, 644 (11th Cir. 2015).

Not defined by the Fair Housing Act, "interfere" retains a "plain, ordinary, and most natural meaning." *Speights & Runyan v. Celotex Corp. (In re Celotex Corp.)*, 227 F.3d 1336, 1338 (11th Cir. 2000). *Black's Law Dictionary* defines "interference" as "[t]he act or process of obstructing normal operations or intervening or meddling in the affairs of others." BLACK'S LAW DICTIONARY (12th ed. 2024). Also, the context of a word influences meaning in a statute. *Catalyst Pharms., Inc. v. Becerra*, 14 F.4th 1299, 1307 (11th Cir. 2021). In Section 3617, "interfere" follows "coerce," "intimidate," and "threaten." Interference under Section 3617 is "discriminatory conduct . . . pervasive and severe enough to be considered as threatening or violent." *Lawrence v. Courtyards at Deerwood Ass'n*, 318 F. Supp. 2d 1133 (S.D. Fla. 2004); *see Delawter-Gourlay v. Forest Lake Estates Civic Ass'n of Port Richey, Inc.*, 276 F. Supp. 2d 1222, 1235 (M.D. Fla. 2003) (reversed on other grounds). Provided the definition and context of the word "interfere," the failure to notify a resident of a single board meeting cannot constitute unlawful interference under the Fair Housing Act. Count IV of the complaint fails to state a claim.

The motion to dismiss is **GRANTED**. The complaint fails to state a claim and is **DISMISSED WITHOUT PREJUDICE**. No later than **October 22, 2025**, the plaintiff may amend the complaint.

ORDERED in Tampa, Florida, on October 1, 2025.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE